---

(71 App. Div. 602.)

## In re SMITH'S ESTATE.

(Supreme Court, Appellate Division, First Department.   May 9, 1902.)

TRANSFER TAX—APPRAISAL OF PROPERTY—CORPORATE STOCK—VALUE.

In proceedings for the reappraisal of the property of a decedent, subject to the transfer tax, it appeared that she owned certain stock in a newly organized industrial corporation; that it paid 8 per cent. dividends in the first year of its operation; that an officer of the company sold stock of the par value of $100,000 for $50,000; and that he considered that price as the fair value of the stock. Held insufficient to justify a finding that the stock was worth more than 50 per cent. of its par value.

Appeal from special term, New York county.

Proceeding to assess the transfer tax against the estate of Elizabeth H. Smith, deceased. From an order of the special term confirming the report of an appraiser appointed to reappraise testatrix's property, her executors appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Abraham Gruber, for appellant.
W. E. Kisselburgh, for respondent.

INGRAHAM, J.   The testatrix died in the month of March, 1897, a resident of this state, owning 1,382 shares of stock in the Barrett Manufacturing Company, a corporation organized under the laws of the state of West Virginia, having its principal place of business at Philadelphia, Pa.   In a proceeding to appraise the property of the testatrix subject to the transfer tax, the stock of this corporation . was valued at $70,000, and an order of the surrogate was entered on the 16th of November, 1897, determining that to be the value of the said stock, and fixing the transfer tax thereon.   On October 12, 1898, an application was presented to a justice of the supreme court for a reappraisement of this property under the provisions of the tax law (section 232, c. 908, Laws 1896), and thereupon an order was granted directing a reappraisement of the estate of the above-named decedent, and appointing an appraiser for that purpose.   The appraiser reported that the value of the 1,382 shares of stock of the Barrett Manufacturing Company was $138,200, exceeding by $69,100 the value as fixed in the former proceeding; and from an order confirming that report the executors appeal.   Section 232 of the tax law, under which this application is made, provides that:

"Within two years after the entry of an order or decree of a surrogate determining the value of an estate and assessing the tax thereon, the comptroller of the state may, if he believes that such appraisal, assessment or determination has been fraudulently, collusively or erroneously made, make application to a justice of the supreme court of the judicial district in which the former owner of such estate resided, for a reappraisal thereof. The justice to whom such application is made may thereupon appoint a competent person to reappraise such estate."

The executor appeals upon the ground that the values fixed by the appraiser are not justified by the evidence.   From the evidence before the appraiser it appeared that the Barrett Manufacturing Company was organized under the laws of the state of West Virginia in March, 1896; that three dividends of 2 per cent. each were paid by the company prior to the death of the testatrix, the last of these dividends being declared in December, 1896; that subsequent to the death of the testatrix, on March 31, 1897, there was declared a dividend of 2 per cent. from the earnings of the company during the period of three months immediately prior thereto; that subsequently, during the balance of the year 1897, dividends were paid aggregating 8 per cent. for that year.   It further appeared that the corporation was what was known as an industrial corporation; that there was no regular market value for the stock; that the stock had been sold in the years 1896 and 1897 at $50 per share; that 500 shares were sold at $50 per share, which was 50 per cent. of its par value, in January, 1897; that another sale of 500 shares of the same stock was made in the month of July, 1897, at the same price; that this corporation was formed by the consolidation of several other incorporations, companies, or private partnerships.   The person who sold this 1,000 shares of stock was an officer of the company, and testified that he thought $50 a share was the fair cash value of the stock at the time he sold it, one of the sales being before and the other after the death of the testatrix.   There was no evidence as to the

actual earnings of the company, except the general statement of the officers of the company that these dividends were declared out of its earnings, and no evidence of any bids for or sales of the stock, except those to which attention has been called. There was no proof that the laws of the state of West Virginia required a capitalization of the stock of the company to be based upon the actual cash value of the property transferred to it, and nothing to show for what purpose this stock has been issued. We think this evidence was insufficient to justify a finding that the former appraisal was erroneous, or that the actual market value of this stock at the time of the death of the testatrix was more than the amount at which it had been formerly appraised. Section 230 of the tax law requires that the property shall be appraised immediately after such transfer at the fair and clear market value thereof at that time. Section 231 of the tax law requires the appraiser to appraise the property subject to the tax at its fair market value; and section 232 provides that on a reappraisement the appraiser therein appointed is to "possess the powers, be subject to the duties   *   *   *   provided by sections two hundred and thirty and two hundred and thirty one of this article." Sections 230 and 231 both contemplate the appraisement of the property at its fair market value at the time of the transfer, and that value must be proved by competent legal evidence, to justify the appraiser in fixing any value. In this case there was no evidence as to what would be the fair market value of the stock of the corporation during the first year of its operation, except that the corporation had declared dividends at the rate of 8 per cent. in that year; and that an officer of the company had sold stock of the par value of $100,000 for $50,-000, and that he sold it at that price as the fair value of the stock. We do not think that this evidence would justify a finding that the stock was worth over $50 a share. The finding that it was worth par was based purely on an assumption that the stock of an industrial corporation, paying a dividend of 8 per cent. upon its capital stock from its earnings in the first year of its incorporation, must be worth par; an assumption which we do not think was justified in view of the testimony of the sales of stock during the year at $50 a share, as having been made as the fair market value of the stock at that time. The question was as to the fair market value of this stock at the time of the transfer, which was on the death of the decedent; and in the absence of evidence of any fact tending to show that the sales of the stock that were actually made from the date of the incorporation of the defendant down to a period several months after the death of the decedent were not at the fair market value at the time they were made, and in the absence of evidence tending to show that a stock earning 6 or 8 per cent. dividends a year was worth more than the price at which the stock had been sold, or of any special fact or circumstance showing any greater value of the stock than that at which it had been sold, the appraiser was not justified in fixing the value of the stock at a greater price than was fixed by the original appraisal.

We think, therefore, that, as this evidence failed to show that the former appraisal was erroneous, the order should be reversed, with

$10 costs and disbursements, and the proceedings dismissed, with costs.

VAN BRUNT, P. J., and HATCH, J., concur.  McLAUGHLIN, J., concurs in result.